999 So.2d 1191 (2008)
Rita H. HOLZENTHAL Wife of/and Henry Holzenthal, III, Gretel Holzenthal, Cecelia M. Holzenthal Wife of/and Henry W. Holzenthal, Patricia A. Stanley Wife of/and George E. Thomas and Monica S. Espinel Wife of/and Luis F. Espinel
v.
SEWERAGE & WATER BOARD OF NEW ORLEANS.
Carlo R. Galan, M.D., Gwendolyn D. Redus, Billye B. Ber and Maxine Miller
v.
Sewerage & Water Board of New Orleans.
Jean Feran Wife of/and Fred Feran, Mary Susan Hunt, Mary Sharett Wife of/and Freddie Sharett, Penelope Sheffield, Elise A. Boyer and Cheryl L. Squire
v.
Sewerage & Water Board of New Orleans.
Nos. 2008-CA-0493, 2008-CA-0494, 2008-CA-0495.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 2008.
Joseph G. Gallagher, Jr., Hulse & Wanek, PLC, New Orleans, LA, David J. Bourgeois, *1192 Duplass Zwain Bourgeois Morton Pfister & Weinstock, Metairie, LA, for BCG Engineering & Consulting, Inc., and Continental Casualty Company.
Harry J. Philips, Jr., Margaret L. Tooke, Taylor, Porter, Brooks & Phillips, L.L.P., Baton Rouge, LA, for Fidelity Guaranty Insurance Company.
Herman C. Hoffmann, Jr., Betty F. Mullin, Simon Peragine Smith & Redfearn L.L.P., New Orleans, LA, for James Construction Group, L.L.C.
Terrence L. Brennan, Keith J. Bergeron, Deutsch Kerrigan & Stiles, L.L.P., New Orleans, LA, for Schrenk & Peterson Consulting Engineers, Inc.
O'Neal Walsh, S. Kyle Landrem, Walsh & Bailey, L.L.C., Baton Rouge, LA, for Security Insurance Company of Hartford.
Craig B. Mitchell, Randy T. Cresap, Mitchell & Associates, James B. Irwin, David W. O'Quinn, Irwin Fritchie Urquhart & Moore, L.L.C. New Orleans, LA, for Sewage & Water Board of New Orleans.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD).
MAX N. TOBIAS, JR., Judge.
The defendant and third-party plaintiff, the Sewerage and Water Board of New Orleans ("SWB"), appeals the judgment of the trial court that granted the res judicata exceptions of the following third-party defendants: James Construction Group, L.L.C. ("James"); Brown, Cunningham & Gannuch ("BCG"); Schrenk & Peterson Consulting Engineers, Inc. ("S & P"); and their respective insurers. The judgment dismissed the SWB's third-party demands against these third-party defendants. For the reasons that follow, we affirm the judgment.
The present case involves claims by sixteen homeowners who contend that they suffered damage as a result of a construction project on Napoleon Avenue in New Orleans, the Southeast Louisiana Urban Drainage Project ("SELA"). The homeowners have joined only SWB as a defendant, bringing claims for strict liability under La. C.C. arts. 2317 and 2317.1, absolute liability under La. C.C. art. 667, as well as negligence and inverse condemnation under La. Const. Art. I, § 4. SWB filed third-party demands against the dismissed defendants named above, and additional demands against other defendants who have not been dismissed and are not before the court.
The claims of the sixteen homeowners were originally brought in three separate suits that were consolidated. The claims of three sets of homeowners, Rita and Henry Holzenthal, Dr. Carlos Galan, and Fred and Jean Feran, were set for priority trial because of the plaintiffs' ages. In March 2005, the trial court found in favor of the plaintiffs, but dismissed SWB's third-party demands against James, S & P, BCG, and their insurers, finding insufficient evidence that the contractors violated their contractual or professional standard of care with respect to the construction of SELA.
SWB appealed that judgment to this court, which affirmed the trial court's decision. See Holzenthal v. Sewerage and Water Board of New Orleans, 06-0796 (La. App. 4 Cir. 1/10/07), 950 So.2d 55, writ denied, 07-0294 (La.3/30/07), 953 So.2d 71 (hereinafter "Holzenthal I"). While the appeal was pending, almost every other SELA claim previously pending in the Civil District Court for the Parish of Orleans was removed by the third-party contractor defendants to the United States District Court for the Eastern District of Louisiana and consolidated for pretrial discovery. The lead case is known as Shimon, et al. v. *1193 Sewerage and Water Board of New Orleans.
Soon after removal and before discovery had begun, James, S & P, BCG, and their insurers moved for summary judgment dismissing SWB's claims against them on the basis of res judicata, arguing that Holzenthal I barred SWB's claims. SWB argued that the specific activities that caused the Shimon, et al. damages did not arise from the same operative facts as the conduct that caused the damages in Holzenthal I. The federal trial court granted the motion for summary judgment, finding that the SELA project was a single transaction or occurrence for res judicata purposes. That decision was certified for appeal in June 2007 and argued before the United States Fifth Circuit Court of Appeals in June 2008. No decision has yet been rendered by the court.
The instant case is the only SELA case remaining in state court, to which James, S & P, BCG, and their insurers filed exceptions of res judicata, arguing that the claims against them are barred by Holzenthal I. The trial court granted the exceptions and rendered judgment on 21 November 2007; no written reasons were given or requested. The trial court certified the ruling for immediate appeal pursuant to La. C.C.P. art. 1915 B(2). This timely appeal followed.
SWB has assigned one issue for review: whether the trial court erred in granting the exceptions of res judicata. In arguing that the trial court erred, SWB maintains that: (1) the SELA project is not a single transaction or occurrence; (2) its third-party demands in this case are not the same as those asserted in Holzenthal I and its right to indemnity with respect to these plaintiffs' claims have not been adjudicated; and (3) this court should defer ruling pending a decision by the United States Fifth Circuit Court of Appeals.
In Chevron USA, Inc. v. State, 07-2469 (La.9/08/08), 993 So.2d 187, the Supreme Court examined the doctrine of res judicata and stated:
The doctrine of res judicata in Louisiana is set forth in La.Rev.Stat. 13:4231 which was amended in 1990 to provide as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Based on the language of the above statute, this court has established the following five elements that must be satisfied for a finding that a second action is precluded by res judicata: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted *1194 in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." Burguieres v. Pollingue, 02-1385, p. 7 (La.2/25/03), 843 So.2d 1049, 1053. Since the 1990 amendment to the res judicata statute, this court considers the "chief inquiry" to be "whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." Id.

Id., p. 9, 993 So.2d at 193.
In this case, the first four elements for application of res judicata are clearly satisfied. Holzenthal I is valid, it is final, the parties to the two cases are the same, and the causes action asserted herein existed when Holzenthal I was decided. Thus, we must determine whether the causes of action asserted herein arose out of the same transaction or occurrence that was the subject matter of the first action. In order to do that, we must examine the final decision of this court in the first litigation.
In Holzenthal I, this court was called upon to review both the judgment in favor of the plaintiffs against SWB and the judgments dismissing the third-party demands.[1] We separately examined SWB's claims against James, S & P, and BCG. Each finding is discussed below
With regard to James, we stated:
As to James, the trial court found that, unlike some of the other third party defendants, James had no contractual relationship with SWB. Its contract was with ACOE [Army Corps of Engineers] only. There is no testimonial or other evidence to show that James did not perform its duties in accordance with the plans and specifications outlined in its contract with ACOE. While SWB has argued that at some points during the construction, vibration monitoring records indicated that James exceeded allowable vibration limits, there is no evidence as to when the limits were exceeded or that James was notified or failed to take necessary action to remedy the situation.
As a matter of law, a contractor on a state or federal project who complies with the project's plans and specifications is not liable for damages to the property of third parties. Yearsley v. W.A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940); La. R.S. 9:2771. In order to avoid involuntary dismissal of its third party demand against James, SWB had the burden of establishing a prima facie case by a preponderance of the evidence. La. C.Civ.Pro. art. 1672 B. SWB did not produce evidence proving that it was more probable than not that James's alleged violations of ACOE's plans and specifications for the Project caused the plaintiffs' damages. On appeal, SWB claims that the design of temporary retaining structures could have prevented water table drawdown outside the construction limits. However, this claim was not asserted at trial, ACOE approved James's design for the structure and SWB has not shown that the design violated any specification.
Id. at pp. 41-42, 950 So.2d at 80-81.
In addition, we stated:
Both Mr. [G. Joseph] Sullivan [SWB's general superintendent] and Joseph Becker, SWB's Project engineer, acknowledged that they knew of no failure by James to comply with the ACOE plans and specifications. Mr. [Leonard] Quick [SWB's forensic engineer] also testified that the ACOE accepted James's work as having been performed in compliance with plans and specifications. *1195 SWB called no one from ACOE to support its claim of James's deviation from the contract.
SWB asserts that the vibration monitoring reports show that James violated the ACOE specifications. However, the ACOE specification on pile driving anticipated that the acceptable vibration level would be exceeded, and that damages caused by this anticipated excess vibration, as distinguished from negligently caused excess vibration, would be considered to be part of the Project's cost. There is no evidence that the excess vibrations caused by the pile driving were caused by James's negligence. The ACOE specifications with respect to pile driving stated that when the limit was exceeded, as anticipated, the ACOE would notify James, who then would take measures to reduce the vibrations. There is no proof in the record that ACOE gave such a notice to James or that James failed to take necessary steps in response to such notice.
SWB contends that the "spikes" of vibration over the level set in the contract as the threshold for notice by the monitor to James constitutes a violation by James of the plans and specifications. This argument ignores the uncontroverted evidence of record that such "spikes" are unavoidable in the course of this type of construction. Furthermore, there is no evidence that James failed to act upon any warning from the monitor that vibration levels were approaching or exceeding the notification threshold.
Id. at pp. 43-44, 950 So.2d at 81-82.
The second third-party defendant addressed in Holzenthal I was S & P, which designed the box culvert; its duties included monitoring the daily construction activities, pursuant to its contract with SWB. We stated:
The court held that S & P's contract was for professional services. Thus, it was incumbent upon SWB to establish a standard of care, S & P's breach of the standard, and that the breach caused the plaintiffs' damages. The court noted that neither of SWB's expert engineers established through their testimony the standard of care applicable to S & P or that S & P breached an applicable standard of care.
* * *
In order to prevail against S & P, SWB had the burden of proving that S & P's professional engineering services were not performed with the same degree of skill and care exercised by others in the same profession in the same general area. Greenhouse v. C.F. Kenner Associates Ltd. Partnership, 98-0496, p. 7 (La.App. 4 Cir. 11/10/98), 723 So.2d 1004, 1008. SWB had the further burden of proving that S & P's alleged breach of this standard of care was the legal cause of the plaintiffs' damages.
The plaintiffs made no claim against S & P. Their expert engineer, Mr. Heyer, offered no testimony that S & P's professional services deviated from the standard applicable to engineers in the New Orleans area. SWB's engineering expert, Mr. Quick, was not asked and did not offer evidence of such deviation.
Id. at pp. 45-47, 950 So.2d at 82-83.
The next third-party defendant sued by SWB was BCG, which the trial court noted had a professional service contract with SWB like that with S & P. The trial court specifically rejected SWB's claim that BCG's services also included activities that do not fall under the category of professional services. We stated:
The trial court found that SWB presented no evidence of a standard of care, much less that [BCG] breached an applicable standard. We find no error in the trial court's conclusion.

*1196 Furthermore, there is no evidence that [BCG] initiated, directed, engaged in or performed any construction activities. Absent such evidence, the trier of fact could not draw a direct relationship or causal connection between the plaintiffs' damages and [BCG]'s actions. Likewise, SWB's reliance on alleged inadequacies in the monitoring of vibration levels is inapplicable to [BCG]. Plaintiffs alleged, and the evidence proved, that it was the construction work and not the monitoring, that damaged their property. As Mr. Sullivan testified, the purpose of the monitoring program was to determine whether damage alleged to be caused by the Project was in fact caused by the Project. There is no evidence that the monitoring program was or should have been designed to eliminate the likelihood of damage to adjacent property. With or without monitoring, the plaintiffs would have sustained the damage caused by the construction process.
Id. at pp. 47-48, 950 So.2d at 83-84.
The final third-party defendant addressed in the underlying action was Fidelity & Guaranty Insurance Company ("Fidelity"), which issued a general liability insurance policy to BCG. The policy specifically excluded coverage for damages caused by rendition of professional services. Since BCG's sole relationship with the parties was for providing professional services, the trial court found that the policy exclusion applied to SWB's claim against Fidelity. We found no error in the trial court's disposition of SWB's claims against BCG and Fidelity.
As we stated earlier, the first three requirements for res judicata are satisfied: the first judgment is valid, it is final, and the parties to the two cases are the same. We also find no disagreement among the parties with regard to the fourth requirement: that the causes of action asserted in this suit existed at the time of final judgment in the first litigation.
Thus, the issue presented is whether the case before us arose out of the same transaction and occurrence that gave rise to the dispute in Holzenthal I. SWB argues that it does not, contending that just because the third-party defendants were found without liability in Holzenthal I does not, ipso facto, mean that they have no liability to the present plaintiffs. In particular, SWB avers that in Holzenthal I, the courts found that the plaintiffs were damaged by activities that did not violate the third-party defendants' contracts. SWB states in its appellate brief:
The third-party defendants have not established that the specific activities which supposedly damaged the instant plaintiffs were the same as those that allegedly damaged the Holzenthal plaintiffs. In this regard, construction vibrations that exceeded the contract limits on one day may not have damaged the Holzenthal plaintiffs, but it could have damaged the instant plaintiffs. The third-party defendants have not satisfied their burden of showing that the operative factsthat is, the particular, daily construction vibrations and dewatering activities that plaintiffs say caused their damageare the same as those in Holzenthal [I]. Until the specific operative facts that are identified and explored, the third-party defendants cannot meet their burden of establishing their exceptions.
In response, the third-party defendants contend that it is SELA itself and the contracts entered into by the parties in connection therewith that define the transaction and occurrence giving rise to Holzenthal I and the present litigation. In the earlier litigation, we stated the plaintiffs' cause of action as follows:

*1197 The plaintiffs claim that their homes were damaged as a result of the Napoleon Avenue drainage construction project, having suffered significant settlement and/or vibration damage as a result of the effects of dewatering, steel sheet pile driving, timber pile driving and movement of heavy equipment including cranes, pile driving hammers, excavation equipment, trucks, tractors and other heavy machinery.
Id. at p. 5, 950 So.2d at 60. We further stated:
It is their [SWB] position, accepted by the trier of fact, that the Project was performed in accordance with its plans and specifications, and the damage to the plaintiffs was caused as a necessary, albeit regrettable, consequence of the nature of the public work. Pile driving and dewatering, together with the concomitant use of heavy equipment, while serving a valid public purpose, had as their necessary consequence damage to neighboring property.
Id. at pp. 11-12, 950 So.2d at 64. Finally, we stated:
This is clearly a case in which a valid and vital public purpose, improved drainage of our city-below-sea-level, was served. The evidence clearly preponderates that the contractors on the Project performed in accordance with the plans and specifications provided by ACOE and SWB. Despite the best efforts of the SWB and ACOE and the contractors, dewatering and vibration damage to these neighboring interests was the natural consequence of the Project. Under the Avenal/Chambers[2] analysis, this is a classic case of inverse condemnation and liability for foreseeable damage caused by ultrahazardous activities. As such, the case is appropriate for the trial court's dispositive judgment. Finding no manifest error in the trial court's judgments, we affirm the judgments in these consolidated appeals.
Id. at pp. 51-52, 950 So.2d at 85.
SWB elected to join the third-party defendants to the underlying suit and have its causes of action against them tried in Holzenthal I. The trial court found in favor of the third-party defendants and against SWB on all issues. Even a cursory reading of Holzenthal I reveals that the causes of action were not limited to those specific plaintiffs, but to the project as a whole.
All of the present plaintiffs' claims arise out of SELA, a project that was going to cause unavoidable damage to the properties in the vicinity. All of SWB's claims against the third-party defendants are for breach of contract, issues addressed in Holzenthal I. Thus, we agree that res judicata applies and that the trial court was correct in rendering its judgment.
Accordingly, we affirm the judgment of the trial court, dismissing the third-party defendants in these consolidated cases.
AFFIRMED.
NOTES
[1] For the complete factual background, see Holzenthal I, supra, 950 So.2d 55.
[2] Avenal v. State, 03-3521 (La. 10/19/04), 886 So.2d 1085; State Through Dept. of Transp. and Dev. v. Chambers Inv. Co., Inc., 595 So.2d 598 (La. 1992).